IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA

CHAD M. DOTY,                      )
                                   )
       Plaintiff,             )
                                   )
v.                                 ) Case No. CIV-18-087-KEW
                                   )
COMMISSIONER OF SOCIAL             )
SECURITY ADMINISTRATION,           )
                                   )
       Defendant.             )

**OPINION AND ORDER**

Plaintiff Chad M. Doty (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the finding of this Court that the Commissioner=s decision should be and is AFFIRMED.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social

Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally,* Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. Hawkins v. Chater, 113 F.3d 1162, 1164 (10th Cir. 1997)(citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); *see also*, Casias, 933 F.2d at 800-01.

### Claimant's Background

Claimant was 47 years old at the time of the ALJ's decision. Claimant completed his high school education. Claimant has worked

in the past as a truck driver, yard spotter, and diesel mechanic. Claimant alleges an inability to work beginning August 17, 2013 due to limitations resulting from right shoulder and arm problems caused by a work accident.

**Procedural History**

On February 1, 2016, Claimant protectively filed for disability insurance benefits under Title II (42 U.S.C. ' 401, *et seq.*) of the Social Security Act. Claimant's application was denied initially and upon reconsideration. On April 3, 2017, Administrative Law Judge ("ALJ") Lantz McClain conducted an administrative hearing by video with Claimant appearing in Poteau, Oklahoma and the ALJ presiding from Tulsa, Oklahoma. On June 6, 2017, the ALJ issued an unfavorable decision. On February 28, 2018, the Appeals Council denied review. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

**Decision of the Administrative Law Judge**

The ALJ made his decision at step five of the sequential evaluation. He determined that while Claimant suffered from severe impairments, he retained the residual functional capacity ("RFC") to perform sedentary work.

**Error Alleged for Review**

Claimant asserts the ALJ committed error in (1) reaching an improper RFC determination (with several associated sub-issues listed); and (2) finding Claimant could perform the jobs identified in the decision at step five.

**RFC Evaluation**

In his decision, the ALJ determined Claimant suffered from the severe impairments of status post right shoulder surgery, status post implantation of stimulator, status post right carpal tunnel syndrome surgery, and obesity. (Tr. 14). The ALJ concluded Claimant could perform sedentary work. In so doing, he found Claimant could lift and/or carry ten pounds occasionally, and up to ten pounds frequently, could stand and/or walk at least six hours in an eight hour workday, could sit for at least six hours in an eight hour workday, could occasionally climb ladders, ropes, scaffolds, and stairs, could occasionally balance, kneel, crouch, and crawl, must avoid overhead work with the right upper extremity, which was Claimant's dominant extremity, and could frequently use the right hand for handling, fingering, and feeling, which was Claimant's dominant hand. (Tr. 16).

After consultation with a vocational expert, the ALJ found

5

Claimant could perform the representative jobs of food and beverage order clerk and touch up screener, both of which were found to exist in sufficient numbers in the regional and national economies. (Tr. 20). As a result, the ALJ found Claimant was not under a disability from August 17, 2013 through the date of the decision. Id.

Claimant first contends the ALJ failed to properly consider the opinion of Claimant's treating physician, Dr. Vestal Smith. Dr. Smith completed a medical source statement dated March 8, 2017. He found Claimant the lifting/carrying, standing/walking, and sitting limitations consistent with the RFC. (Tr. 508-09). He also concluded Claimant was "limited" in reaching in all directions, including overhead, handling, fingering, and feeling in the right upper extremity. The basis for the finding was "physical exam and functional capacity evaluation. No overhead [in the] RUE [right upper extremity] and only 10 lbs or less." (Tr. 510)(bracketed information added by this Court).

In the decision, the ALJ gave Dr. Smith's opinion "great weight" as being "consistent with the claimant's thorough physical examinations and Dr. Smith's own contemporaneous notes" – in particular, his Workers' Compensation Evaluation. (Tr. 18). In

the document entitled "Worker's Compensation Impairment Rating," Dr. Smith found a 14% impairment of the upper extremity for worker's compensation purposes. (Tr. 500). Additionally, in Dr. Smith's latest examination note dated July 20, 2016, he found Claimant's symptoms were stable for quite some time. He was not in acute distress. No change in sensation or strength was noted. He had 1+ edema in the right hand which was unchanged. (Tr. 474).

Nothing in any of these medical records would indicate that Dr. Smith was imposing a limitation greater than the "frequent[2]" use provided in the RFC. Indeed, he specifically found Claimant could use the right upper extremity for ten pounds or less, only restricting him to no overhead use. (Tr. 510).

"[R]esidual functional capacity consists of those activities that a claimant can still perform on a regular and continuing basis despite his or her physical limitations." White v. Barnhart, 287 F.3d 903, 906 n. 2 (10th Cir. 2001). A residual functional capacity assessment "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts ... and nonmedical evidence." Soc. Sec. R. 96–8p. The ALJ must also discuss the individual's ability to

---

2 "Frequent" use is defined as "activity or condition exists from 1/3 to 2/3 of the time." *Dictionary of Occupational Titles*, App. C, 1991 WL 688702.

7

perform sustained work activities in an ordinary work setting on a "regular and continuing basis" and describe the maximum amount of work related activity the individual can perform based on evidence contained in the case record. Id. The ALJ must "explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." Id. However, there is "no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on the functional capacity in question." Chapo v. Astrue, 682 F.3d 1285, 1288 (10th Cir. 2012).

The ALJ's RFC assessment concerning Claimant's use of the right upper extremity was supported by substantial evidence. The restriction to "frequent" handling, fingering, and feeling was wholly consistent with Dr. Smith's opinion and other medical evidence of record. The fact Claimant finds it "hard to imagine" otherwise as stated in the briefing is of no moment. Claimant also states that the state agency physicians' opinions conflicted with the ALJ's findings on manipulation of the right extremity. Claimant misstates the evidence. Dr. Walter Bell found that Claimant's handling, fingering, and feeling were "unlimited" and that his reaching was limited to occasional. (Tr. 55). Dr. Karl Boatman's assessment was identical. (Tr. 70-71). Neither of

these opinions were inconsistent with either Dr. Smith's opinion or the RFC found by the ALJ.

Claimant's next assertion of error contends that the ALJ erroneously found Claimant's mental impairments to be not severe. Where an ALJ finds at least one "severe" impairment, a failure to designate another impairment as "severe" at step two does not constitute reversible error because, under the regulations, the agency at later steps considers the combined effect of all of the claimant's impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity. Brescia v. Astrue, 287 F. App'x 626, 628–629 (10th Cir. 2008). The failure to find that additional impairments are also severe is not cause for reversal so long as the ALJ, in determining Claimant's RFC, considers the effects "of all of the claimant's medically determinable impairments, both those he deems 'severe' and those 'not severe.'" Id. quoting Hill v. Astrue, 289 F. App'x. 289, 291–292, (10th Cir. 2008).

Moreover, the burden of showing a severe impairment is "de minimis," yet "the mere presence of a condition is not sufficient to make a step-two [severity] showing." Flaherty v. Astrue, 515 F.3d 1067, 1070-71 (10th Cir. 2007) quoting Williamson v. Barnhart, 350 F.3d 1097, 1100 (10th Cir. 2003); Soc. Sec. R. 85-

28. At step two, Claimant bears the burden of showing the existence of an impairment or combination of impairments which "significantly limits [his] physical or mental ability to do basic work activities." 20 C.F.R. § 416.920(c). An impairment which warrants disability benefits is one that "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 1382c(a)(1)(D). The severity determination for an alleged impairment is based on medical evidence alone and "does not include consideration of such factors as age, education, and work experience." Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988).

After reciting and analyzing the evidence of Claimant's mental status, the ALJ found Claimant's mental impairment caused no more than mild limitations in any functional area. Therefore, the condition was found to be non-severe. (Tr. 15). The medical record indicates Claimant's mental conditions were sporadic at best. In a pre-surgical psychological evaluation dated December 22, 2014, Claimant was found to "endorse[] a minimal number of depressive symptoms and a mild level of anxious symptoms" after extensive mental testing. He did not indicate significant psychiatric distress at that time. (Tr. 387). In April of 2016,

Claimant presented with "moderate depressive symptoms." He was on medication. He indicated sadness because of his medical condition with altered sleeping habits and denied anhedonia, a change in appetite, crying spells, decreased ability to concentrate, fatigue, guilt, feelings of worthlessness, tendency toward indecisiveness, or weight change. He had no suicidal ideation. (Tr. 468).

In another screening done in June of 2016, Claimant described that he had "serious depression." (Tr. 480). His problems appeared to stem from his medical conditions. (Tr. 489).

At no point has a physician indicated Claimant is unable to engage in basic work activities because of his mental condition. The state agency physicians indicated that Claimant's mental problems were attributed to chronic pain and medications rather than a psychological issue. (Tr. 53, 67). Both reports noted that Cooper Occupational Medicine Center in November of 2015 found Claimant was negative for anxiety and depression. Id. The medical evidence is simply insufficient to find Claimant's mental condition constituted a severe impairment.

Claimant also asserts the use of a spinal cord stimulator restricts him to sitting when he uses the device and the ALJ provided for no unscheduled breaks in the RFC. While Claimant had

the stimulator put in place, the record does not indicate how often Claimant engages it or any adverse effect that the device might have upon his ability to engage in basic work activities. He has been limited to sedentary work which provides for sitting for up to six hours in a workday. Nothing in the record would indicate Claimant's use of the stimulator would fail to be accommodated by these restrictions. This Court finds no error in the RFC provided by the ALJ.

**Credibility Determination**

Claimant challenges the ALJ's credibility findings by failing to consider Claimant's work history, daily activities, functional restrictions, treatment history, medication and side effects, and "other factors." This Court agrees with Defendant that Claimant failed to recognize that the regulations changed on the evaluation of a claimant's subjective symptoms in March of 2016. Primarily, the change eliminated the use of the term "credibility" and made clear that the analysis did not involve "an examination of an individual's character." Soc. Sec. R. 16-3p, 2017 WL 5180304, at *4. The required analysis is described in the regulations as follows:

> Once the existence of a medically determinable impairment that could reasonably be expected to produce pain or other symptoms is established, we recognize that some

> individuals may experience symptoms
> differently and may be limited by symptoms to
> a greater or lesser extent than other
> individuals with the same medical impairments,
> the same objective medical evidence, and the
> same non-medical evidence. In considering
> the intensity, persistence, and limiting
> effects of an individual's symptoms, we
> examine the entire case record, including the
> objective medical evidence; an individual's
> statements about the intensity, persistence,
> and limiting effects of symptoms; statements
> and other information provided by medical
> sources and other persons; and any other
> relevant evidence in the individual's case
> record.
>
> <u>Soc. Sec. Ruling 16-3p Titles II & Xvi:
> Evaluation of Symptoms in Disability Claims</u>,
> Soc. Sec. R. 16-3P, 2017 WL 5180304, *4 (Oct.
> 25, 2017).

The ALJ described Claimant's testimony and the medical record as a whole. His findings on credibility are consistent with the objective record and contain supporting statements for his conclusions. For instance, he found Claimant's daily activities, the medical findings, and the treatment received and results obtained as being inconsistent with Claimant's statements of intensity and resulting limitations. (Tr. 17). He also found several inconsistencies in the functional capacity evaluation in November of 2015 with his subjective statements. (Tr. 18). The decision as a whole supports the ALJ's conclusions on Claimant's credibility. This Court attributes no error to the analysis.

**Step Five Determination**

Claimant challenges the ALJ's step five findings based upon the use of his RFC restrictions in the hypothetical questioning of the vocational expert. Since the RFC was found to be supported by substantial evidence and the questioning was consistent with the RFC, no error is found at step five.

**Conclusion**

The decision of the Commissioner is supported by substantial evidence and the correct legal standards were applied. Therefore, this Court finds, in accordance with the fourth sentence of 42 U.S.C. ' 405(g), the ruling of the Commissioner of Social Security Administration should be and is **AFFIRMED**.

IT IS SO ORDERED this 30th day of September, 2019.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE